# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                         **CASE NO. 3:25cr88-MCR**

**MICHAEL D WHITACRE, JR,**

    **Defendant.**

_____/

## ORDER

Defendant Michael D. Whitacre, Jr., is charged in a five-count Indictment with engaging in a child exploitation enterprise, conspiring to distribute child pornography, and distributing, receiving, and possessing child pornography. *See* 18 U.S.C. §§ 2252A(g); 2251(d)(1)(A); 2252A(a)(2); 2252A(a)(5)(B). Whitacre moves to suppress evidence seized during a search of his residence together with subsequent statements he made to law enforcement, arguing that the search warrant affidavit was insufficient to support a finding of probable cause. ECF No. 24 (Sealed). The Government opposes the request. ECF No. 25 (Sealed). The Court concludes that no hearing is necessary, and having carefully considered the arguments and the affidavit, denies the motion.[1]

---

[1] Defendant makes no argument that any officer willfully or recklessly misrepresented or omitted facts that would give rise to the need for a hearing. The undersigned thus need only consider the face of the affidavit presented to the issuing judge to determine whether probable

## I.   Background

Investigator Suzanne D. Pollock, a Task Force Officer with the Internet Crimes Against Children Task Force, obtained a search warrant for Whitacre's residence based on an affidavit stating that "[s]ince January 9, 2024, an individual residing at [ ] Old Spanish Trail Road in Pensacola, Florida, has been reported to be using multiple Electronic Service Providers to access and share 'child pornography.'"   ECF No. 24–1 at 4.   Investigator Pollock detailed seven CyberTipline Reports received from the National Center for Missing and Exploited Children between January 2024 and January 2025, explaining that the CyberTipline Reports originated from Electronic Service Providers ("ESP"), namely, Discord Inc., MediaLab/Kik, and Reddit Inc., and that each included an email associated with the account and a certain Cox Communications Internet Protocol ("IP") address.   She reviewed not only the reports but also the images referenced in each report.

To summarize, the seven CyberTipline Reports discussed in the affidavit include the following information:

---

cause existed.  To the extent the Government has presented additional facts and exhibits that were not before the issuing judge, they have not been considered, and there is no indication that any exhibits were presented to the issuing judge with the affidavit.

1. CyberTipline Report 1[2] (No. 184105463) from Discord, Inc. on January 9, 2024, reported a single file uploaded on January 1, 2024, that depicted sexual activity associated with an email "acfreshfl1@gmail.com" and the IP address 70.188.239.157. Investigator Pollock viewed the file and determined that the video depicted what appeared to her to be sexual intercourse between consenting adults.

2. CyberTipline Report 2 (No. 195651995) from Discord, Inc. reported a user had uploaded one file of "child pornography" on June 24, 2024, associated with a similarly named email "fresh07l@gmail.com" and the IP address 98.170.207.156. Investigator Pollock viewed the identified file and described it as a photograph of a "nude prepubescent female child on her hands and knees with her legs spread apart and her genitals facing the camera." ECF No. 24–1 at 2.

3. CyberTipline Report 3 (No. 196157894) from MediaLab/Kik reported "36 files of child pornography" on June 26, 2024, associated with the email "acfreshfl1@gmail.com" and the IP address 98.170.207.156. Investigator Pollock viewed the associated files and "confirmed the images and videos depicted the gross sexual abuse of children as young as an infant. Also included in the files were at least 8 videos depicting children engaged in sexual acts with animals." *Id.*

4. CyberTipline Report 4 (No. 200118005) from Reddit, Inc. reported on October 10, 2024, that a user violated the terms of service by communications detailing child sexual abuse in chat logs. The user was associated with an email account of mdwfl29@gmail.com and the IP address 70.188.239.157. Investigator Pollock read the chat logs and verified that it was a discussion about the sexual abuse of an 8-year-old boy by the father and father's friend, and she confirmed also that both

---

[2] Each CyberTipline Report bears a unique number and a specific date of when the offending conduct occurred. For ease of reference, the undersigned discusses them as "Cybertipline Report 1," "CyperTipline Report 2," or merely "Report 1," "Report 2," and so on, as referenced in the Motion to Suppress. The Government asserts there were actually nine cybertips but, again, the Court reviews only the information that was before the issuing judge in determining whether there was probable cause to issue the warrant.

parties to the conversation claimed to have access to and frequently sexually abuse children.

5. CyberTipline Report 5 (No. 201588303), a report from Reddit, Inc. on October 25, 2024, again reported a user violating the terms of service in communications associated with the email mdwfl29@gmail.com and the IP address 70.188.239.157. Investigator Pollock said that the communication was included with the cyber tip and revealed a discussion about the user committing sexual abuse on a 14-year-old female.

6. CyberTipline Report 6 (No. 203379466) from MediaLab/Kik reported that 7 files of "child pornography" were uploaded between November 29 and December 7, 2024, associated with the email "he36730@gmail.com" and two IP addresses (different from those listed above): 98.162.189.251 and 107.202.234.239. Investigator Pollock confirmed that the videos "depicted the sexual abuse, including sodomy of children as young as toddlers." *Id.* at 3.

7. CyberTipline Report 7 (No. 205497775) from MediaLab/Kik reported that one uploaded file of "apparent child pornography" with child sexual abuse imagery, including sodomy, was shared with multiple Kik users within a chat group on January 29, 2025. One user in the group used the email address "he36730@gmail.com," and a user claimed to have perpetrated some of the sexual abuse/exploitation depicted and shared. No IP address was listed in this report.

The affidavit included that as part of the investigation, two subpoenas were sent to Cox Communications requesting subscriber information for two specific IP addresses on two dates. Cox Communications responded to the subpoenas by confirming that, on June 26, 2024, Michael Whitacre of the Old Spanish Trail Road address at issue in Pensacola, Florida, was the subscriber for IP address 98.170.207.156 (the IP address listed in CyberTipline Reports 2 and 3) and that on

CASE NO. 3:25cr88-MCR

January 23, 2024, Whitacre and his residence were registered as the subscriber information for IP address 70.188.239.157 (listed in CyberTipline Reports 1, 4, and 5). Investigator Pollock also stated in the affidavit that she had initiated a "knock and talk" at the Old Spanish Trail Road residence on February 12, 2025, and confirmed that Defendant Michael D. Whitacre, Jr. has lived there with his parents[3] for approximately 20 years.

The affidavit also included Investigator Pollock's training and experience with people who possess child pornography, the characteristics of digital evidence, and how file sharing is used to disseminate child sexual abuse images. She explained that people go to great lengths to conceal their activity, generally keeping their collection in one place or computer in a location they control. She indicated that software or hardware exists to enable people to share internet access over networks, allowing multiple persons to appear from the same IP address and thereby conceal the source or method used to access the internet. The examination of these items can reveal information that may be used to corroborate ownership and use of the computer and internet service accounts and also corroborate the user at a given time. In addition, she explained that deleted files may be recovered by a forensic analyst

---

[3] His father is also named Michael Duane Whitacre.

CASE NO. 3:25cr88-MCR

because digital evidence remains on a device for a significant amount of time. In her opinion, a computer or other digital media capable of accessing the internet and containing evidence of the possession of child pornography or the creation or promotion of images of child sexual performance would be found at Whitacre's Old Spanish Trail Road residence.

A search warrant was issued for computer related devices, storage devices, correspondence, and passwords located at the Old Spanish Trail Road residence, in the curtilage, or in vehicles present at that address. When executing the warrant on February 13, 2025, officers seized Whitacre's cell phone, and the charges against him are based on images, videos, and communications found on that cell phone, as well as statements made by Whitacre during an interview with law enforcement.[4] In his motion to suppress, Whitacre argues that some of the tips were irrelevant, most did not adequately connect the criminal conduct to him or his residence, and that the one tip that did establish the requisite nexus, Report 3, was based on stale information and a conclusory description of the conduct. The Government disagrees

---

[4] Whitacre asserts that his statements also should be suppressed but made no arguments specific to them. The Government asserts that Whitacre consented to an interview after being advised of his *Miranda* rights and admitted using multiple email addresses, including those referenced in the cybertips. The Government states that Whitacre also admitted he was the sole user of his cell phone, and he provided officers its location within the home as well as the swipe pattern to unlock it.

on all points and argues that even if the affidavit could be considered insufficient to demonstrate probable cause, the officers acted in good faith pursuant to *United States v. Leon*, 468 U.S. 897 (1984).

## II.    Discussion

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The probable cause standard requires a fair probability, not a *prima facie* showing, of criminal activity.  *Illinois v. Gates,* 462 U.S. 213, 235 (1983).  An affidavit supporting a warrant is presumed valid, *United States v. Whyte*, 928 F.3d 1317, 1333 (11th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)), and the issuing judge determines probable cause by considering whether, given the totality of the circumstances set out in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates,* 462 U.S. at 238.  This is to be "a practical, common-sense decision." *Id.; see also United States v. McCall*, 84 F.4th 1317, 1324 (11th Cir. 2023) (courts apply a "'commonsense' rather than 'hypertechnical' reading to search warrant applications"), *cert. denied*, 144 S. Ct. 1042 (2024).  Consequently, warrant affidavits are considered under much less rigorous standards than those governing

the "quanta of proof" required or admissibility of evidence at trial. *See Gates,* 462 U.S. at 235–36 ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision.").

An affidavit supports a finding of probable cause if it "establishes a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Delgado*, 981 F.3d 889, 897–98 (11th Cir. 2020) (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)). In the child pornography context, the Eleventh Circuit has explained that it is not necessary for the issuing judge to personally view photographs or images alleged to be child pornography; instead, "a reasonably specific affidavit describing the contents can provide an adequate basis to establish probable cause." *United States v. Sparks*, 806 F.3d 1323, 1338 (11th Cir. 2015), *overruled in part on other grounds by United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020) (*en banc*).

The task of the reviewing court is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates,* 462 U.S. at 238–39 (alterations accepted, internal quotations omitted). Evidence obtained through an illegal search in violation of the Fourth Amendment ordinarily must be

excluded from trial. *Martin*, 297 F.3d at 1312 (citing *Franks*, 438 U.S. at 171). But even when a Fourth Amendment violation has occurred, the exclusionary rule does not always apply. *See Herring v. United States*, 555 U.S. 135, 141 (2009) ("the benefits of deterrence must outweigh the costs"). The Supreme Court has created a good-faith exception that in relevant part precludes the exclusion of evidence when an officer has acted in objectively reasonable good-faith reliance on a warrant that is later found to be unsupported by probable cause. *See id.* at 142 (citing *Leon*, 468 U.S. at 922). It is the government's burden to demonstrate that this good-faith exception applies and that burden can be "met by reference to facts stated within the affidavit." *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003). To avoid application of the *Leon* good-faith exception where, as here, the sufficiency of the warrant affidavit is at issue, a defendant must show that "the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[5] *Martin*, 297 F.3d at 1313 (internal quotations omitted).

---

[5] To avoid application of the *Leon* good faith exception, a defendant must show that one of four circumstances exists: (1) the magistrate judge was misled by information the affiant knew was false or in reckless disregard of the truth; (2) the magistrate judge wholly abandoned the judicial role; (3) "the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) "the warrant is so facially deficient" as to the place to be searched or things to be seized that an officer could not reasonably presume the warrant to be valid. *Martin*, 297 F.3d at 1313 (internal quotations omitted).

Considering the totality of the circumstances, the Court concludes that Investigator Pollock's affidavit provided a substantial basis for issuing the warrant. The images and videos reported to be child pornography by the CyberTipline Reports were described in the affidavit based on Investigator Pollock's personal viewing of the materials, and those descriptions are not challenged as inaccurate.[6] The affidavit directly links CyberTipline Report 3 (36 child pornography files on June 26, 2024) to the place searched based on Cox Communication's confirmation of the subscriber information for IP address 98.170.207.156 on June 26, 2024. This in turn sufficiently links the conduct of CyberTipline Report 2 (reporting a child pornography upload only two days earlier using the same IP address) to Whitacre and his residence. If that were not enough, Cox Communications confirmed that IP address 70.188.239.157, identified in CyberTipline Reports 4 and 5 (chats discussing the sexual abuse of an 8 year old and a 14 year old in October 2024), was also registered to Whitacre at his residence.

The emails referenced in the CyberTipline Reports lend additional support to finding the requisite nexus. Report 3 (confirmed as using an IP address registered

---

[6] Whitacre challenges the description provided of the videos referenced in Report 3 as conclusory but not inaccurate. The Court does not agree that the description is inadequate, as discussed *infra*.

CASE NO. 3:25cr88-MCR

to Whitacre at his residence) was associated with the email "acfreshfl1@gmail.com"—that email was very similar to "fresh07l@gmail.com" referenced in Report 2 (using the same IP address as Report 3), and was *identical* to the email referenced in Report 1 (using the IP address 70.188.239.157, confirmed as registered to Whitacre at his residence in January 2024). This maps onto Reports 4 and 5 (chat logs), which each used the same IP address as Report 1 (confirmed as registered to Whitacre at his residence), and the email "mdwfl29@gmail.com," comprised of Whitacre's initials. These intertwining details show that Whitacre or someone at his residence was using the same or similar emails in relation to these two different IP addresses that were each registered to Whitacre and this residence. Taken together, the circumstances provided a substantial basis for determining there was a fair probability that evidence of child pornography would be found at Whitacre's residence.[7]

The Court finds Whitacre's arguments that this is insufficient unavailing. First, he asserts that CyberTipline Report 1 (reporting adult sexual content) and

---

[7] The Court reaches this decision without considering the content of CyberTipline Reports 6 and 7, for which the affidavit did not provide the requisite link to Whitacre or the residence. There is no allegation that Whitacre was the subscriber for the IP addresses identified in those Reports and the referenced email address is also not linked to Whitacre and bears no relation to other emails he used. Nonetheless, the affidavit is sufficient to establish probable cause even without considering Reports 6 and 7.

Reports 4 and 5 (reporting chats discussing child sexual abuse) are irrelevant because they did not reference child pornography. The Court disagrees. As noted above, Report 1 is relevant not for its content but for showing a link between Whitacre, IP address 70.188.239.157,[8] and the same email as referenced in Report 3 (which used a different IP address that was definitively confirmed as registered to Whitacre on the day of the offending conduct in Report 3). Reports 4 and 5 consist of chat logs discussing the physical sexual abuse of two children—the very type of conduct that is depicted in child pornography. Finding those chat logs sufficiently relevant to the child pornography crimes being investigated was not a bridge too far on this record. *See generally, United States v. Bilus*, 626 F. App'x 856, 864 n. 12 (11th Cir. 2015) (noting that "Congress and the Courts have consistently found that such links exist" between child pornography and child molestation). Furthermore, the issuing judge was permitted to rely on Investigator Pollock's experience, and she explained that persons trading in or possessing images of child sexual exploitation, or those interested in the actual sexual exploitation of children, "such as this case, often communicate with others through correspondence or other documents (whether digital or written) which could tend to identify the origin of the images as well as

---

[8] IP address 70.188.239.157 was confirmed as registered to Whitacre on January 23, 2024, which is within about 3 weeks of the date of Report 1.

provide evidence of a person's intent and interest in child pornography or child exploitation." ECF No. 24–1 at 5-6; *see United States v. Robinson*, 62 F.3d 1325, 1331 n. 9 (11th Cir. 1995) (the opinions and conclusions of an experienced enforcement agent/affiant are properly considered as factors in determining probable cause).

Whitacre argues that the nexus between the residence searched and the criminal conduct was not sufficiently established because the IP subscriber information was not correlated with the date of every CyberTipline Report. But that level of precision is not required for probable cause. *Cf. United States v. Vanbrackle*, 397 F. App'x 557, 561 (11th Cir. 2010) (stating an officer's "exclusion of IP address information [from a warrant affidavit] is not dispositive of the probable cause determination"). The affidavit sets out a direct link between Whitacre and his residence to 36 files of child pornography (Report 3) on the same date the IP address was confirmed as registered to him, which Whitacre concedes. This alone provides a fair probability that evidence would be found. Whitacre further argues there was no information in the affidavit from which the issuing judge could infer that if an IP address is associated with a residence on one specific date it can be assumed to be still associated with the same residence on another date. Common sense dictates otherwise. While not every conduct report was correlated with subscriber

information on the same day, Report 2 referenced an upload of child pornography only two days before the subscriber confirmation, which allows a reasonable inference that the subscriber information would be the same. And the chat logs discussing child sexual abuse in Reports 4 and 5 occurred nine months after the date when Whitacre was identified as the subscriber for the IP address used, but Whitacre provides no basis for concluding that this interval rendered the information obsolete. Applying a commonsense view of the circumstances, because the email associated with Reports 4 and 5 consisted of Whitacre's initials, there is a fair inference that the IP address registered to Whitacre in January 2024 was still associated with him in October. Also, according to Investigator Pollock's experience, people who possess child pornography keep their collections and devices in one place, close to their control, and she established that Whitacre has lived at this residence for 20 years. Thus, a sufficient nexus was shown for purposes of establishing probable cause, which "is not a high bar." *United States v. Delgado*, 981 F.3d 889, 897 (11th Cir. 2020) (internal quotations omitted).

While conceding that Report 3 may establish probable cause, Whitacre discounts this Report by arguing that the information was stale by the time the affidavit was presented to the issuing judge seven-and-a-half months later. Eleventh Circuit precedent forecloses this argument. *See United States v. Touset*, 890 F.3d

1227, 1237–38 (11th Cir. 2018) (explaining that evidence that a defendant possessed a computer file that contained child pornography rarely becomes stale because even deleted files can remain on electronic devices, finding information from one year and a half earlier was not stale). Whitacre attempts to avoid *Touset* by relying on a Second Circuit case holding that a single incident of access does not create a fair probability that child pornography would still be found on the device months later. *See United States v. Raymonda*, 780 F.3d 105, 117 (2nd Cir. 2015). This reliance is misplaced. The 36 files of child pornography reported through CyberTipline Report 3 can hardly be considered a single incident even assuming the material was only viewed or accessed online. Moreover, the additional facts here include that a file was *uploaded* two days earlier from the same IP address, which would no doubt leave a digital footprint. *Touset* governs, and the information cannot be considered stale.

Whitacre's final argument is that the affidavit's description of the images related to Report 3 is conclusory and therefore inadequate to support probable cause. The Court disagrees. Investigator Pollock viewed the images and described them as depicting "the gross sexual abuse of children as young as an infant," and "[a]lso included in the files were at least 8 videos depicting children engaged in sexual acts with animals." ECF No. 24–1 at 2. Whitacre cites two Eleventh Circuit cases, one

involving a warrant affidavit including very detailed graphic descriptions of naked bodies and the positions shown in the video, which the Eleventh Circuit determined was "more than enough to allow a judge, relying on common sense, to determine that it was fairly probable that the phone contained evidence of images depicting a sexual performance by a child." *Sparks*, 806 F.3d at 1337. The other case found probable cause with no description of conduct, relying instead on the investigator's experience together with a statement that shared files from an IP address traced to the defendant's internet service provider matched files known to contain child pornography, and the affidavit provided the file names. *See United States v. Carroll*, 886 F.3d 1347, 1351-522 (11th Cir. 2018). The description provided in Report 3 lies somewhere in between these scenarios and is not too barebones or vague to provide a fair probability that the material was evidence of a crime.

Whitacre also relies heavily on a decision out of this District in which Judge Walker granted a motion to suppress in part based on a warrant affidavit's failure to contain sufficient facts from which a judge could independently determine probable cause. *See United States v. Gibbs*, Case No. 4:23cr61-MW-MAF, ECF No. 41 at 5 (N.D. Fla. June 27, 2024). The case is factually distinguishable, however, because there, the affidavit relied on a cybertip that referenced "suspected child abuse material" with no further description and no indication that the affiant had viewed

the materials to confirm the contents. Judge Walker found the cybertip description inadequate, boilerplate, bare bones, and conclusory. *See id.* at 5 (finding the affidavit included "no information whatsoever about the contents of the file at issue, including whether it is an image, a video, or something else") & at 7 n. 6 (finding the cybertip standing alone did not provide a sufficient factual basis for probable cause). Here, by contrast, the investigator viewed the material and verified the contents with descriptive language of sufficient specificity.

Even if there were any doubt as to whether there was a substantial basis supporting the probable cause determination, the Government has shown based on the information provided in the affidavit that the officers reasonably relied in good faith on the warrant. For reasons discussed above, Whitacre cannot meet the high bar of showing that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Martin*, 297 F.3d at 1313 (internal quotations omitted). Consequently, good faith under *Leon* would preclude exclusion of the evidence.

Accordingly, Whitacre's Motion to Suppress, ECF No. 24, is **DENIED**.

**DONE AND ORDERED** this 29th day of August 2025.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**